## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

RIEDELL SHOES, INC.,

        Plaintiff,

v.

        **MEMORANDUM OF LAW & ORDER**
        Civil File No. 11-251 (MJD/AJB)

ADIDAS AG and ADIDAS
AMERICA, INC.,

        Defendants.

Edward P. Sheu and Kristin L. Petersen, Best & Flanagan LLP, Counsel for Plaintiff.

W. Joseph Bruckner, Lockridge Grindal Nauen PLLP, and Charles H. Hooker, III, Nichole Davis Chollet, and R. Charles Henn, Jr., Kilpatrick Townsend & Stockton LLP, Counsel for Defendants.

## I.   INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Injunction [Docket

No. 5] and Defendants' Motion to Dismiss or Transfer [Docket No. 15].  The

Court heard oral argument on April 22, 2011.  The Court grants Plaintiff's motion

and denies Defendants' motion because the Minnesota Action is the first-filed

case, and no compelling circumstances exist to justify disregarding the first-filed

rule.

## II.     BACKGROUND

### A.     Factual Background

#### 1.     The Parties

Plaintiff Riedell Shoes, Inc. ("Riedell") is a Minnesota corporation with its

sole place of business in Red Wing, Minnesota.  Riedell is a family-owned

corporation that makes only roller skates and ice skates.

Defendant adidas America, Inc., is a Delaware corporation with its

principal place of business in Portland, Oregon.  adidas America, Inc., is a wholly

owned subsidiary of Defendant adidas AG, a German company with its

principal place of business in Germany.  (Defendants are collectively referred to

as "adidas.")  adidas is one of the world's largest manufacturers of athletic

footwear, apparel, and sporting equipment.

adidas owns various federal trademark registrations for footwear showing

three diagonal stripes on the side of the shoe ("Three-Stripe Mark"), as well as

for other athletic items bearing the three-stripe design.  Beginning in at least

1952, adidas has been using its Three-Stripe Mark on athletic footwear sold in the

United States.  adidas represents that it vigorously enforces its rights in the

Three-Stripe Mark against apparent infringers.

Riedell and adidas had no prior contact or relationship before December

2010.

### 2. Riedell's Trademark Application

On May 26, 2010, Riedell applied for a trademark with the United States

Patent and Trademark Office ("USPTO"), serial number 85047957, regarding a

double stripe design roller skate boot.  On September 14, 2010, the USPTO issued

a letter finding that "no conflicting marks" should bar registration of Riedell's

proposed trademark.  On November 16, 2010, it issued a Notice of Publication.

The deadline to oppose Riedell's trademark application was December 16, 2010,

after which a certificate of registration would issue in approximately 12 weeks.

adidas claims that it became aware of Riedell's trademark application in

December 2010.  On December 14, 2010, adidas requested an extension of time to

oppose Riedell's trademark application, and the USPTO granted an extension

until March 16, 2011.

On January 25, 2011, adidas sent Riedell a letter stating that Riedell's

double stripe design roller skate boots "infringe and dilute adidas's famous

Three-Stripe Mark."  The letter recounted that adidas had won multiple lawsuits

in which the federal court had recognized a likelihood of confusion created by

shoes bearing two or four parallel strips.  It noted the potential damages and

remedies available under federal and state law "in cases such as this."

The letter then stated:

> adidas therefore demands that Riedell immediately: **(1)
> withdraw its application to register the two-stripe roller skate boot
> design; (2) cease and desist from all sales of infringing roller skate
> boots, as well as any other footwear bearing stripes in a manner
> likely to be confused with adidas's Three-Stripe Mark; and (3)
> identify the number of such units sold, the price at which each
> such unit was sold, and the number of remaining units on order
> and in inventory.**
>
> If we do not receive a satisfactory response within ten (10)
> days of your receipt of this letter, we will take appropriate action to
> protect the rights of adidas.

adidas represents that it planned to wait to file a lawsuit in the District of

Oregon, its home jurisdiction, until it received a response from Riedell.

**B.     Procedural History**

On February 1, 2011, Riedell filed a Complaint against adidas in this Court

(the "Minnesota Action" and the "Minnesota Complaint") asserting Count I:

Declaratory Judgment, 20 U.S.C. § 2201.  Riedell seeks a declaration that "Riedell

has no liability to adidas' trademark or other threatened claims and that Riedell's

products do not infringe or affect any intellectual property or other rights held

by adidas."  (Minn. Compl. at 7.)

On February 2, 2011, Riedell served adidas, though its registered agent for

service of process in Minnesota, with the Minnesota Action.

On February 3, Riedell's counsel forwarded a copy of the Minnesota

Complaint to adidas's counsel and requested, both in that letter and in a

telephone call, that adidas engage in settlement negotiations that month.

Riedell's counsel suggested that Riedell would grant an extension of time to

respond to the Minnesota Complaint to facilitate settlement discussions.

adidas's counsel stated that they appreciated the offer, and would speak to

adidas and respond.

Shortly after the telephone conversation, still on February 3, adidas filed a

complaint in the United States District Court for the District of Oregon (the

"Oregon Action" and "Oregon Complaint") asserting Count One: Federal

Trademark Infringement; Count Two: Federal Unfair Competition; Count Three:

Unfair and Deceptive Trade Practices; Count Four: Common Law Trademark

Infringement and Unfair Competition; Count Five: Federal Trademark Dilution;

and Count Six: State Trademark Dilution and Injury to Business Reputation.

adidas sent a courtesy copy of the Oregon Complaint to Riedell's counsel,

informed Riedell of adidas's position that the Minnesota Action was an improper

anticipatory filing, and requested that Riedell dismiss the Minnesota Complaint

or adidas would file a motion to dismiss or transfer the Minnesota Action.

On February 7, Riedell filed the current motion to enjoin the Oregon

Action.  On February 8, adidas filed the current motion to dismiss or transfer.

On February 28, adidas filed an opposition proceeding with the USPTO

seeking to oppose the registration of Riedell's double-stripe trademark

application.

Plaintiff requests that this Court enjoin Defendants from pursuing their

case filed in the District of Oregon.  Defendants request that this Court either

dismiss this case or transfer it to the District of Oregon.

## III.   DISCUSSION

### A.   First-Filed Rule

> The well-established rule is that in cases of concurrent jurisdiction,
> the first court in which jurisdiction attaches has priority to consider
> the case.  This first-filed rule is not intended to be rigid, mechanical,
> or inflexible, but is to be applied in a manner best serving the
> interests of justice.  The prevailing standard is that in the absence of
> compelling circumstances, the first-filed rule should apply.

Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1005 (8th Cir.

1993) (citations omitted).  The question is "whether, as between two courts both

having jurisdiction over the parties and the subject matter of the dispute the

court in which jurisdiction first attached should proceed to adjudicate the

controversy and should restrain the parties from proceeding in the later-filed

action."  Id. at 1004.

**B.     Applicability of the First-Filed Rule in this Case**

The parties to the Minnesota Action and the Oregon Action are identical.

Both actions arise from the same set of facts.  Both actions seek a determination

of whether Riedell's proposed trademark application should proceed to

registration and whether Riedell has infringed adidas's trademark right with

respect to Riedell's double stripe design on its roller skate boots.  Both have

progressed at substantially the same rate.  Proceeding simultaneously in two

courts will multiply the work of both the courts and the parties.  There is the

potential of conflicting orders.  Therefore, this litigation should proceed in only

one court.  It is undisputed that the Minnesota Action was filed first.  Therefore,

priority falls to the Minnesota Action.  However, the Court must also examine

the potential "red flags" noted by adidas.

### C.    Red Flags

In Northwest Airlines, the Eighth Circuit noted two potential "red flags"

that might justify overriding the first-filed rule, but ultimately decided that

neither applied to outweigh the first-filed rule in that case.  989 F.2d at 1007.

First, it noted that the plaintiff may have been on notice that the defendant

intended to soon file a lawsuit.  Second, it noted because the first-filed lawsuit

was a declaratory judgment action, it might have been a preemptive strike.

### 1.    Whether Riedell Was on Notice of adidas's Intent to Sue

adidas argues that the first Northwest red flag is present because Riedell

was placed on notice of adidas's intent to sue within 10 days by adidas's January

25, 2011 letter.  The Court concludes that the January letter did not put Riedell on

notice that an adidas lawsuit was imminent.

The January letter threatened that adidas would "take appropriate action

to protect the rights of adidas."  It did not clearly threaten **legal** action by adidas.

Cf. Anheuser-Busch, Inc. v. Supreme Int'l. Corp., 167 F.3d 417, 418-19 (8th Cir.

1999) (disregarding first-filed rule when defendant sent cease-and-desist letter

clearly stating that, unless the plaintiff responded in five days, the defendant had

authorized its attorneys to take legal action, and plaintiff and defendant had a

business relationship and were in the midst of business negotiations when they

became involved in the conflict that later because the subject of the trademark

infringement actions); Creative Compounds, LLC v. Sabinsa Corp., No.

1:04CV114CDP, 2004 WL 2601203, at *1-*2 (E.D. Mo. Nov. 9, 2004) (overriding

first-filed rule when the defendant's letter "stated that it would seek a court

order immediately enjoining the use of the name FORSTHIN if [the plaintiff] did

not take action" within six days and the defendant "was clear and consistent

from the outset of this dispute that if [the plaintiff] did not comply with its cease

and desist letter within six days, [the defendant] would take legal action").

adidas's letter was not unequivocal.  It did not threaten an injunction or any

other type of imminent legal action.

     adidas's failure to mention its intent to sue Riedell is a strong indication

that Riedell was not on notice of adidas's purported intent to imminently file a

lawsuit.  In fact, the Eighth Circuit has found that a "cease and desist letter did

not indicate that litigation was imminent" even when it gave a deadline and did

mention legal action:

> The letter added that "[s]uch use also violates various state anti-
> dilution statutes and other state laws."  Inverizon wrote that it
> "would prefer to resolve this matter amicably and avoid
> unnecessary legal action."  The letter demanded a response within

14 days, stating a timely response with indications that Verizon will refrain from using the mark "may obviate more formal legal action."

Verizon Commc'ns, Inc. v. Inverizon Int'l, Inc., 295 F.3d 870, 871-72, 874 (8th Cir. 2002) (citations omitted).

adidas's threat to "take appropriate action to protect the rights of adidas," is particularly ambiguous given that the parties had no prior relationship or contact, and they sell products in different markets.  adidas threatened some unspecified action if Riedell did not comply with its demands.  However, adidas did not explicitly say that it would sue Riedell.  Given that adidas and Riedell had no previous relationship or contact, beyond adidas filing a motion for an extension to object to Riedell's trademark application, the Court is not convinced Riedell knew or should have known that adidas would imminently sue.  A reasonable interpretation of the threat to take "appropriate action," is that adidas would file an opposition to Riedell's trademark application.

adidas also claims that the fact that it quickly filed its Oregon Action after Riedell filed the Minnesota Action demonstrates that it was contemplating legal action before the Minnesota Action was filed.  The Court does not draw this same conclusion.  adidas, by its own admission, has filed dozens of similar suits in the District of Oregon in the last decade, and the complaint against Riedell

largely appears to be a boilerplate trademark complaint, not well-tailored to

Riedell, since, for example, it requests that "Defendant be ordered to cease

offering for sale . . . all products bearing the Three-Stripe Mark," although there

is no allegation that Riedell has every used a **three**-stripe design.  (Or. Compl. at

17).

### 2.    Declaratory Relief

adidas argues that a second <u>Northwest</u> red flag is present because Riedell's

complaint only seeks declaratory relief, demonstrating that the Minnesota Action

is a preemptive strike.

The Court acknowledges that declaratory actions warrant a closer look, but

concludes that, in this case, no compelling circumstances for disregarding the

first-filed rule exist.  As explained above, the January letter did not clearly

indicate that adidas intended to file suit once the ten-day period expired.  A

reasonable interpretation of Riedell's decision to quickly file the Minnesota

Action is that, because adidas had already delayed Riedell's trademark

application in December, once Riedell received the January letter, which might

have indicated that adidas would oppose its trademark application, Riedell

wanted to quickly clear its trademark for approval to avoid a cloud over its

longstanding business.

Riedell has had no previous dealings with adidas.  This is not a case in

which the parties had been in long negotiations before the first lawsuit was filed,

demonstrating that the purpose of the Declaratory Judgment Act – an early

adjudication of the issue to avoid the unnecessary accrual of damages – was not

served.  Cf. Koch Eng'g Co. v. Monsanto Co., 621 F. Supp. 1204, 1207-08 (E.D.

Mo. 1985) (dismissing first-filed declaratory judgment action because purpose of

Declaratory Judgment Act – to provide early adjudication and avoid unnecessary

accrual of damages – was not met when parties had been in negotiations for two

years before lawsuits were filed and no additional damages were continuing to

accrue).  Here, there is no evidence of ongoing negotiations between the parties,

and the damages threatening Riedell continue to accrue.  Riedell legitimately

sought prompt resolution of its trademark application and of adidas's allegations

of potential liability.

Riedell is entitled to have the infringement allegation against it promptly

resolved so that it can conduct its business affairs, pursue its trademark

registration, if justified, and further develop its business with the new popularity

of roller derby.  See Goya Foods, Inc. v. Tropicana Prods., Inc., 846 F.2d 848, 854

(2d Cir. 1988) ("Whether a litigant is seeking to halt an alleged infringement or,

as in this case, seeking a declaration of non-infringement, it is entitled to have the

infringement issue resolved promptly so that it may conduct its business affairs

in accordance with the court's determination of its rights.").  A declaratory

judgment plaintiff can show harm when it faces potentially large liability.  See,

e.g., AEI Income & Growth Fund 23 LLC v. Razzoo's, LP, Civ. No. 03-6509

(RHK/JSM), 2004 WL 547226, at *9 (D. Minn. Mar. 17, 2004) (applying first-filed

rule, although first-filed case was a declaratory judgment action, because,

"although the Texas Action is for declaratory judgment, it was filed in the face of

a potential liability in excess of $3 million for the alleged breach of the Lease").

This is not a case in which Riedell is contemplating using the allegedly infringing

design in the future, or, as in Anheuser-Busch, in which the alleged infringer

recently started attempting to use a new design.  Riedell has sold its skates with

this design for decades and, therefore, potential damages are enormous, and the

cloud of infringement affects Riedell's already-established reputation and

ongoing sales.  Riedell faces real and accruing damages.

### 3.    Lack of Evidence of Bad Faith

Finally, the Court takes note that, unlike in the myriad of cases cited by

adidas, here, there is no evidence of bad faith or underhandedness by Riedell.

"[I]n the absence of bad faith, the mere presence of 'red flags' does not

necessarily warrant setting aside the first-to-file rule."  Acordia of Minn., Inc. v.

Hies, Civil No. 05-2860 (JRT/RLE), 2006 U.S. Dist. LEXIS 98861, at *3 (D. Minn.

Feb. 9, 2006).  Riedell filed suit in its natural forum – Minnesota, where it has

operated exclusively since 1945.  Riedell points out that it offered an early

settlement meeting with adidas to resolve the dispute.  Riedell never lulled

adidas into thinking Riedell would not file a lawsuit.  See, e.g., Schwendiman

Partners, LLC v. Hurt, 71 F.Supp.2d 983, 988 (D. Neb. 1999) (noting that

circumstances justifying disregard for first-filed rule include "evidence that the

first-filer promised or indicated in some manner that it would not sue, reliance

on that indication by the natural plaintiff, followed by the filing of a surprise

complaint by the first-filer").  Nor did Riedell secretly file the first-filed

declaratory judgment action and keep the lawsuit secret as a negotiating tool and

method to preempt the defendant's choice of forum when it later files suit.  Cf.,

e.g., Meredith Corp. v. Riegel Consumer Prods., No. 4:04-CV-90273, 2005 WL

290013, at *9-*10 (S.D. Iowa Jan. 31, 2005).

**IV.    CONCLUSION**

The Court follows the first-filed rule and enjoins the Oregon Action.  The

Minnesota Action was the first-filed case.  The parties and issues in the two cases

are substantially identical.  adidas never clearly threatened to imminently sue

Riedell; the parties had no prior relationship; Riedell faces substantial and

continuing injury; and Riedell has not acted in bad faith.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

1.    Plaintiff's Motion for Injunction [Docket No. 5] is **GRANTED**.

2.    Defendants' Motion to Dismiss or Transfer [Docket No. 15] is **DENIED**.

3.    Defendants adidas America, Inc. and adidas AG are hereby restrained and enjoined from further pursuing their Complaint filed against Plaintiff Riedell Shoes, Inc. in United States District Court for the District of Oregon, Case Number 3:11-cv-00139-BR.


Dated:   May 16, 2011                          s/ Michael J. Davis
                                               Michael J. Davis
                                               Chief Judge
                                               United States District Court